IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| XUREX, INC., | ) | Case No. 14-43536-drd-7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| JERALD S. ENSLEIN, in his capacity as | ) | |
| Chapter 7 Trustee for XUREX, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | Adversary No. 16-4114 |
| | ) | |
| IPFS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Before this Court is the Motion for Summary Judgment (the "Motion") filed by plaintiff Jerald S. Enslein, in his capacity as Chapter 7 Trustee (the "Trustee" or "Plaintiff") for debtor Xurex, Inc. ("Debtor") against defendant IPFS Corporation ("IPFS" or the "Defendant"). Also before the Court is Defendant's Motion for Summary Judgment. Both parties filed Suggestions in Support of their motions and Suggestions in Opposition to the opposing parties' motions. The Plaintiff initiated the adversary proceeding seeking recovery of preferential transfers under § 547(b). In accordance with Rule 7056 of the Federal Rules of Bankruptcy Procedure and for the reasons set forth below, the Court grants the Defendant's Motion and denies the Plaintiff's Motion.

1

# I. FACTUAL BACKGROUND

The following facts are undisputed. Defendant is in the business of financing insurance premiums. In June 2014, Debtor entered into a commercial premium finance agreement with Defendant to finance an insurance policy. Pursuant to that agreement, Debtor agreed to make a 25% down payment and Defendant agreed to finance the balance. Debtor was to repay the balance in nine monthly payments of $5,273.67. Under the agreement, Debtor assigned to Defendant a security interest in any unearned premiums under such policy. Those unearned premiums were Defendant's collateral to secure repayment by Debtor. The value of the unearned premiums diminished each day in an amount equal to the per diem amount of the premiums ($170.45 per day), which premiums became earned for each day that the insurance provider provided insurance. Each of the $5,273.67 payment made by Debtor on July 21, 2014; August 26, 2014; September 18, 2014; and October 2, 2014 are transfers at issue in this case which the Trustee seeks to avoid and recover in the total amount of $42,189.36.

Debtor filed for bankruptcy on October 17, 2014, at which time the unearned premiums under the finance agreement had a value of $38,692.15. Both parties have filed motions for summary judgment.

## II. LEGAL ANALYSIS

### A. Standard for Summary Judgment

Bankruptcy Rule 7056, applying Federal Rule of Civil Procedure 56(c), provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the non-moving

party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When reviewing the record for summary judgment, the court is required to draw all reasonable inferences in favor of the non-movant. *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

### B.  Analysis

This is an adversary proceeding commenced by the Trustee in this case against Defendant IPFS Corporation for recovery of preferential transfers in the amount of $42,189.36. However, a transfer that is otherwise avoidable under § 547(b) as a preferential transfer may not be avoided if the transfer was "intended by the debtor and the creditor to be a contemporaneous exchange for new value given to the debtor" and was "in fact a substantially contemporaneous exchange" pursuant to § 547(c)(1). There is no dispute between the parties that a prima facie case under § 547(b) was established by the Trustee. Thus, the only relevant issue in dispute between the parties is whether Defendant has a valid defense to the preference claim under § 547(c)(1) as a contemporaneous exchange for new value. Both parties have filed motions for summary judgment. There are no factual disputes as to the material facts set forth by the Trustee in paragraphs 1-19. Defendant admits paragraphs 1-19 but does controvert paragraph 20 insofar as it does not include the entirety of Defendant's interrogatory response. Defendant also included an additional material fact regarding the parties' intent with regard to the policy and security interest as set forth in its submitted affidavit. The issue of intent is discussed below.

The defense of contemporaneous exchange for new value under § 547(c)(1) provides: (c) the Trustee may not avoid under this section a transfer- (1) to the extent that such transfer was (A) intended by the debtor and creditor to or for whose benefit such transfer was made to be a

3

contemporaneous exchange for new value given to the debtor; (B) and in fact a substantially contemporaneous exchange.  It requires that Defendant prove two things:  (1) that there was a substantially contemporaneous exchange for new value; and (2) that both parties so intended. The parties' briefs focus almost exclusively on the first requirement.

Defendant argues that this case is virtually identical to the decision on remand from the B.A.P. in *In re Falcon Products, Inc.*, 2009 WL 248596 (Bankr. E.D. Mo. 2009), and that its motion for summary judgment should be granted. Upon remand from the BAP (*In re Falcon Products, Inc.*, 381 B.R. 543 (B.A.P. 8th Cir. 2008)), the bankruptcy court in *Falcon* held that payments made under the terms of a premium financing agreement involved a contemporaneous exchange for new value where the lender released an interest in unearned premiums that corresponded to each payment.  2009 WL 248596 at 16.  Defendant asserts that each transfer resulted in contemporaneous exchanges for new value as it released to Debtor an amount equivalent to its interest in the unearned premiums, and on each such date the collateral value exceeded the secured balance due from the Debtor to Defendant.  This Court agrees.

This case is based upon a premium finance agreement under which the Defendant financed the Debtor's acquisition of an insurance policy and payment of its premium.  Debtor made an initial down payment of $15,740.60, with the Defendant financing the remaining $46,471.87, and the Debtor repaying the loan on a schedule that insured that the amount of the unearned premium, which is the Defendant's collateral, always exceeded the balance of the debt[1].  Accordingly, at any given point, the Defendant was over secured.  As each day goes by, and another day of premium is earned, the total value of the creditor's collateral, the unearned

---

[1] *See* Plaintiff's Motion for Summary Judgment, ¶ 11, where the chart shows that after the July 21, 2014, payment made by Debtor to Defendant, Debtor's remaining debt owed was $36,915.69 and Defendant's collateral value (unearned premium value) was $53,691.75.  The additional payments made in August, September and October show the same result.  Thus, after each payment made, Defendant's collateral increased and Defendant was oversecured.

premium, declines. Assuming, however, that the down payment was substantial enough and that the payment schedule was structured such that the debt was always exceeded by the unearned premium, each time Debtor made a payment reducing the amount of the debt, it freed up some of the collateral from the lien. That release, which occurred by operation of the payment, constituted value given to the Debtor in exchange for the payment to the Defendant. The Eighth Circuit has recognized the general proposition that a release of a lien can constitute new value under § 547. *See Velde v. Kirsch*, 543 F.3d 469 (8th Cir. 2008). As discussed above, in the BAP case, the court recognized the specific concept that collateral release occurs in premium finance transactions structured in a way such as in this case, and it noted that such transactions will likely be shielded from avoidance under § 547(c)(1) because the payment to the creditor results in a release of an equivalent value of collateral. *In re Falcon Products, Inc.*, 381 B.R. 543 (B.A.P. 8th Cir. 2008).

The Trustee asserts that Defendant is confused and that the release of collateral occurs by reason of the passage of time and the earning of additional amounts of the premium. However, the Trustee fails to recognize that both things are true: the collateral value declines, but that as long as the collateral value exceeds the debt, as the debt is paid, a release of collateral occurs which is value to the debtor.

The cases cited by the Trustee are all either distinguishable or legally incorrect. Trustee relies on *In re Paris Industries Corp.*, 130 B.R. 1 (Bankr. Md. 1991), to argue that cancellation of the policy was required in order for Defendant to have actual rights in the collateral to release. However, there does not need to be a cancellation of the policy for value to be given to the debtor. While cancellation permits the debtor to actually realize the value of the collateral, the release that occurs when each payment is made increases the value of the debtor's asset. The

*Paris* court was erroneous in describing how premium financing agreements work and in turn was incorrect in finding that cancellation of the policy was necessary. A lender such as Defendant obtains it rights in the unearned premiums and the time the policy is funded, not upon its cancellation. The funding of the policy creates the collateral, not the cancellation of the policy. *See, e.g., In re St. James, Inc*, 402 B.R. 209 (Bankr. E.D. Mich. 2009)(citing *In re RBS Industries, Inc.*, 67 B.R. 946 (Bankr. D. Conn. 1986)). There was no cancellation required nor alleged in *Falcon* and, as noted in *In re Rocor International, Inc.*, 380 B.R. 567 (B.A.P. 10th Cir. 2007), no later decision has followed the *Paris* court's rationale likely due to its requirement of a prior cancellation.

Likewise, the Trustee's reliance on *Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153 (D.C. Cir. 1986) is also misplaced. In that case, the creditor was not oversecured because the Debtor had defaulted on its payments. That is not the factual scenario in the case at hand. Similarly, *In re R.M. Taylor, Inc.*, 245 B.R. 629 (Bankr. W.D. Mo. 2000) is factually distinguishable from this case and did not involve premium financing. In Taylor, the "new value" claimed by the insurer was forbearance from cancelling the policy which does not qualify as new value under § 547. In this case, each receipt of payment, or "new value," released a corresponding interest in the value of the unearned premiums in exchange for such payment.

On the question of intent, the second element, Defendant submitted an affidavit by one of its employees to the effect that it was the Defendant's intent to give value to the Debtor in the form of such a release each time a payment was made. Admittedly, that allegation is somewhat self-serving and conclusory, but it is uncontested. In addition, intent can be inferred from the circumstances and because the agreement was structured in such a way that a release necessarily occurred each time a payment was made given the amount of the down payment and the way the

repayment schedule was structured, the Court infers that the parties intended a contemporaneous exchange for new value. *See Falcon*, 2009 WL 248596 at 16. As in *Falcon*, here Debtor intended to transfer the payment amount to Defendant and Defendant intended to release the equivalent amount of its interest in the unearned premiums under the policy. Consequently, the parties' intent can be inferred from the agreement to satisfy the intent element of § 547(c)(1). *Id.*

### III.   CONCLUSION

After reviewing the entire record, the Court finds that the Defendant has met its burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Accordingly, the Defendant's Motion for Summary Judgment is granted and the Plaintiff's Motion for Summary Judgment is denied.

Dated: July 19, 2017             /s/Dennis R. Dow
                                 THE HONORABLE DENNIS R. DOW
                                 UNITED STATES BANKRUPTCY JUDGE